**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------  :
ELAINE WANG,                                               :
                                                           :
       Plaintiff,       :  Civil Action No. 1:22-cv-03390
                                                           :
v.                                                         :  **COMPLAINT FOR VIOLATIONS OF**
                                                           :  **SECTIONS 14(a) AND 20(a) OF THE**
FIRST HORIZON CORPORATION, HARRY                           :  **SECURITIES EXCHANGE ACT OF**
V. BARTON, JR., KENNETH A. BURDICK,                        :  **1934**
DARYL G. BYRD, JOHN N. CASBON,                             :
JOHN C. COMPTON, WENDY P.                                  :  **JURY TRIAL DEMANDED**
DAVIDSON, WILLIAM H.                                       :
FENSTERMAKER, BRYAN JORDAN, J.                             :
MICHAEL KEMP SR., RICK E. MAPLES,                          :
VICKI R. PALMER, COLIN V. REED, E.                         :
STEWART SHEA III, CECELIA D.                               :
STEWART, RAJESH SUBRAMANIAM,                               :
ROSA SUGRAÑES, and R. EUGENE                               :
TAYLOR,                                                    :
                                                           :
       Defendants.     :
                                                           :
---------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against First Horizon Corporation ("First Horizon" or the "Company") and the members of First Horizon's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed acquisition of First Horizon by affiliates TD Bank The Toronto-Dominion Bank, a Canadian chartered bank ("TD Bank").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 12, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Falcon Holdings Acquisition Co. ("Merger Sub"), a wholly-owned subsidiary of TD Bank US Holding Company, an indirect, wholly owned subsidiary of TD ("Parent"), will merge with and into First Horizon with First Horizon surviving, then thereafter, Parent and First Horizon will merge, with Parent surviving as the surviving corporation (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 27, 2022 (the "Merger Agreement"), each First Horizon stockholder will receive $25.00 in cash (the "Merger Consideration") for each First Horizon share owned.

3. As discussed below, Defendants have asked First Horizon's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to First Horizon's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's proxy solicitor is headquartered in this District.

## PARTIES

8. Plaintiff is, and has been at all relevant times, an owner of First Horizon stock and has held such stock since prior to the wrongs complained of herein.

9. Individual Defendant Harry V. Barton Jr. has served as a member of the Board since July 2020.

10. Individual Defendant Kenneth A. Burdick has served as a member of the Board since 2019.

3

11. Individual Defendant Daryl G. Byrd has served as a member of the Board since July 2020 and is the Executive Chairman of the Board.

12. Individual Defendant John N. Casbon has served as a member of the Board since July 2020.

13. Individual Defendant John C. Compton has served as a member of the Board since 2011.

14. Individual Defendant Wendy P. Davidson has served as a member of the Board since 2019.

15. Individual Defendant William H. Fenstermaker has served as a member of the Board since July 2020.

16. Individual Defendant Bryan Jordan has served as a member of the Board since July 2008 and is the Company's President and Chief Executive Officer.

17. Individual Defendant J. Michael Kemp Sr. has served as a member of the Board since July 2020.

18. Individual Defendant Rick E. Maples has served as a member of the Board since July 2020.

19. Individual Defendant Vicki R. Palmer has served as a member of the Board since 1993.

20. Individual Defendant Colin V. Reed has served as a member of the Board since 2006.

21. Individual Defendant E. Stewart Shea III has served as a member of the Board since July 2020.

22. Individual Defendant Cecelia D. Stewart has served as a member of the Board since 2014.

23. Individual Defendant Rajesh Subramaniam has served as a member of the Board since 2016.

24. Individual Defendant Rosa Sugrañes has served as a member of the Board since July 2020.

25. Individual Defendant R. Eugene Taylor has served as a member of the Board since 2017.

26. Defendant First Horizon is a Tennessee corporation and maintains its principal offices at 165 Madison Avenue, Memphis, Tennessee. The Company's stock trades on the New York Stock Exchange under the symbol "FHN."

27. The defendants identified in paragraphs 9-25 are collectively referred to as the "Individual Defendants" or the "Board."

28. The defendants identified in paragraphs 9-26 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

29. First Horizon operates as the bank holding company for First Horizon Bank that provides various financial services. First Horizon was founded in 1864 and is headquartered in Memphis, Tennessee. The Company was formerly known as First Horizon National Corporation and changed its name to First Horizon Corporation in November 2020. The Company operates through three segments: Regional Banking, Specialty Banking, and Corporate. It offers general banking services for consumers, businesses, financial institutions, and governments. The Company also underwrites bank-eligible securities and other fixed-income securities eligible for

5

underwriting by financial subsidiaries; sells loans and derivatives; and offers advisory services. In addition, it offers various services, such as mortgage banking; title insurance and loan-closing; brokerage; correspondent banking; nationwide check clearing and remittance processing; trust, fiduciary, and agency; equipment finance; and investment and financial advisory services. Further, the Company sells mutual fund and retail insurance products; and credit cards. It operates approximately 500 banking offices in 22 states under the First Horizon Bank brand and 400 banking centers in 12 states under the FHN Financial brand in the United States.

30. On February 28, 2022, the Company and TD jointly announced the Proposed Transaction in a press release:

> TORONTO and CHERRY HILL, N.J. and MEMPHIS, Tenn., Feb. 28, 2022 /PRNewswire/ -- TD Bank Group ("TD" or "the Bank") (TSX and NYSE: TD) and First Horizon Corporation ("First Horizon") (NYSE: FHN) today announced that they have signed a definitive agreement for TD to acquire First Horizon in an all-cash transaction valued at US$13.4 billion, or US$25.00 for each common share of First Horizon. Through this financially compelling transaction, TD accelerates its long-term growth strategy in the United States by acquiring a premier regional bank with an aligned culture and risk-management framework.
>
> "First Horizon is a great bank and a terrific strategic fit for TD. It provides TD with immediate presence and scale in highly attractive adjacent markets in the U.S. with significant opportunity for future growth across the Southeast," said Bharat Masrani, Group President and Chief Executive Officer, TD. "Working with the First Horizon team, TD will build upon the success of its strong franchise and deliver the legendary customer experiences that differentiate us in every market across our footprint."
>
> Following the closing of the transaction, Bryan Jordan, President and Chief Executive Officer of First Horizon, will join TD as Vice Chair, TD Bank Group, reporting to Bharat Masrani and will join the TD Senior Executive Team. He will also be named to the Boards of Directors of TD's U.S. banking entities as a director and Chair. Jordan will continue to be based in Memphis.
>
> "We have built a very strong business at First Horizon, and by joining forces with TD, we will create extraordinary value for our

key stakeholders with a shared customer-centric strategy, enhanced scale and a broader product set for our clients. This is a true growth story," said Jordan. "We have long respected TD as a leader in U.S. banking and are confident that its continued and growing investments in our local markets will extend our long history of community support. Thank you to our First Horizon associates for their efforts and dedication to our clients and communities as we continue to deliver for them every day. We look forward to successfully completing this transaction and are excited to join TD."

"I am very pleased that Bryan and talented leaders from across First Horizon will join TD. Their deep customer and community relationships and proven success driving growth will be of tremendous value as we integrate our teams and deliver for the millions we serve," added Masrani.

Leo Salom, Group Head, U.S. Retail, TD Bank Group, and President and CEO, TD Bank, America's Most Convenient Bank®, will lead the combined businesses.

"I am excited to welcome First Horizon's associates, leaders and valued customers to TD once the transaction closes. As one team, with complementary businesses, distribution channels and a shared culture of best-in-class customer service, we will chart the next phase of growth together," said Salom. "The Southeastern U.S. represents a tremendous opportunity for TD and the addition of First Horizon's commercial and specialty banking capabilities will position us as a leading national player in commercial banking. We will combine our resources and capabilities and continue to invest in the region as we focus on delivering the most differentiated banking experience in our markets."

**A Top 6 U.S. Bank**

On a pro forma basis excluding merger adjustments, TD's U.S. franchise[1] will be a top 6 U.S. bank, with approximately US$614 billion in assets and a network of 1,560 stores, serving over 10.7 million U.S. customers across 22 states; globally, TD Bank Group will have approximately C$1,841 billion in assets, with over 2,600 branches serving the needs of more than 27.5 million customers[2].

First Horizon is headquartered in Memphis, Tennessee, with assets of US$89 billion as of December 31, 2021. First Horizon operates 412 branches and serves over 1.1 million consumer, business and commercial customers across 12 states. TD will benefit from First Horizon's strong regional presence, including leadership positions in Tennessee and Louisiana, additional density in Florida, the

Carolinas and Virginia, and important footholds in the attractive Atlanta, Georgia, and Dallas and Houston, Texas markets.

Collectively, populations in First Horizon's markets are expected to grow approximately 50% faster than the U.S. national average, with some markets far exceeding that level, offering important future growth opportunities as TD invests in the region.

**Transaction Highlights**

The transaction is expected to be immediately accretive at closing to TD's adjusted EPS and over 10% accretive to 2023E adjusted EPS on a fully-synergized basis[3]. The transaction is expected to result in a fully-synergized return on invested capital of 10% in 2023[4]. The purchase price represents a 9.8 times multiple of First Horizon's 2023E fully-synergized earnings[4] and a 2.1 times multiple to First Horizon's estimated tangible book value at close[5]. TD expects to achieve approximately US$610 million in pre-tax cost synergies equal to 33% of First Horizon's 2023E non-interest expense[6] through a combination of technology and systems consolidation, and other operational efficiencies. TD expects to incur total merger and integration costs of US$1.3 billion primarily in the first two years following close.

The transaction is expected to close in the first quarter of TD's 2023 fiscal year, and is subject to customary closing conditions, including approvals from First Horizon's shareholders and U.S. and Canadian regulatory authorities. If the transaction does not close prior to November 27, 2022, First Horizon shareholders will receive, at closing, an additional US$0.65 per share on an annualized basis for the period from November 27, 2022 through the day immediately prior to the closing. The transaction will terminate, unless otherwise extended, if it does not close by February 27, 2023.

TD expects to use excess capital on its balance sheet for the transaction, reflecting its robust capital and liquidity position. Concurrent with this announcement, TD separately announced that the automatic share purchase plan established for its normal course issuer bid will automatically terminate in accordance with its terms.

At close, TD's Common Equity Tier 1 ratio is expected to be above 11%[7].

Based on First Horizon's December 31, 2021 balance sheet, the acquisition would add approximately US$55 billion of loans and US$75 billion of deposits to TD's balance sheet, and TD would

8

expect to take a credit mark at close of US$880 million, or 161 basis points of loans.

In addition, TD has agreed to invest US$494 million in non-voting First Horizon preferred stock (convertible in certain circumstances into up to 4.9% of First Horizon's common stock) to support First Horizon's growth and franchise enhancement, including employee retention programs.

**A Shared Commitment to Local Communities**

Once the transaction is completed, Memphis, First Horizon's current headquarters, will be an important regional hub for TD in the U.S. Southeast, supporting customers and operations and contributing to local communities and economies. TD is also committed to retaining First Horizon's client-facing bankers, with no planned branch closures as a result of the transaction. In addition, upon closing, US$40 million will be contributed to a First Horizon foundation.

TD's purpose, to *enrich the lives of our customers, communities and colleagues*, is embedded in the Bank's strategy and is reflected in its unique and inclusive culture.

The TD Ready Commitment brings TD's philanthropy, people and business together to deliver positive impact in local markets.

"First Horizon and TD share a common belief that we can only thrive when the communities in which we live and work thrive. TD is committed to growing our presence and investments across the states in which First Horizon operates," concluded Masrani.

**Advisors**

TD Securities and J.P. Morgan served as financial advisors and Simpson Thacher & Bartlett LLP and Torys LLP served as legal advisors to TD. Morgan Stanley & Co. LLC served as financial advisor and Sullivan and Cromwell LLP served as legal advisor to First Horizon.

\* \* \*

31. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that First Horizon's stockholders are provided with the material information that has

been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

### B. The Materially Incomplete and Misleading Proxy Statement

32. On April 12, 2022, First Horizon filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

33. The Proxy Statement fails to provide material information concerning financial projections by First Horizon management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley to aid them in forming a view about the stand-alone valuation of the Company. The Proxy Statement should have, but fails to provide, certain information in the projections that First Horizon management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is

replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

34. For the Company Projections, the Proxy Statement provides values for certain financial metrics: Earnings per share – Core Excluding One-Time Charges, Net Income Available to Common Shareholders – Core Excluding One-Time Charges, and Risk Weighted Assets, but fails to disclose all inputs and assumptions underlying these metrics.

35. The Company Projections further discloses that it used an estimated long-term growth rate of 5.0%, a 2023 return on tangible common equity estimate for the Company of 15.2% for the Street Forecasts, and 15.6% for the Company Forecasts, but fails to disclose the inputs and assumptions underlying these percentage rates.

36. These financial metrics were reviewed by Morgan Stanley for its financial analyses. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide the omitted information to make the metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

37. With respect to Morgan Stanley's *First Horizon Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples of each company selected by Morgan Stanley for the analysis.

38. With respect to Morgan Stanley's *Dividend Discount Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the 5% annual growth rate; (ii) the inputs and assumptions underlying the range of terminal forward multiples of 11.0x to 13.0x; and (iii) the inputs and assumptions underlying the 7.8% to 9.8% discount rates.

39. With respect to Morgan Stanley's *First Horizon Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the discount rate of 8.8%.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the

financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants
### for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of First Horizon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of First Horizon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of First Horizon, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of First Horizon, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.	Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.	Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.	Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.	Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 26, 2022

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:  *s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114
Email: kaufman@whafh.com

*Attorneys for Plaintiff*

812653